IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CRAIG S.,** | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| | : | |
| vs. | : | NO.   24-cv-6001 |
| | : | |
| **LELAND DUDEK,** | : | |
| Acting Commissioner of Social Security, | : | |
| Defendant. | : | |

### MEMORANDUM OPINION

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                                                                                                  **April 29, 2025**

Plaintiff Craig S. brought this action seeking review of the Acting Commissioner of Social Security Administration's (Acting Commissioner) decision denying his claim for Social Security Disability Insurance (SSDI) benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–433. This matter is before me for disposition upon consent of the parties. For the reasons set forth below, Plaintiff's Request for Review (ECF No. 7) is **GRANTED**.

I.   **PROCEDURAL HISTORY**

Plaintiff filed for SSDI, alleging disability since May 11, 2021, due to sleep apnea, chronic pain, difficulty standing/walking for long periods and lower back injury (slightly protruding L5-L5). (R. 180, 284). Plaintiff's application was denied at the initial level and upon reconsideration, and he requested a hearing before an Administrative Law Judge (ALJ). (R. 93-103). Plaintiff, represented by counsel, and a vocational expert (VE) testified at the December 4, 2023 administrative hearing. (R. 31-53). On January 22, 2024, the ALJ issued a decision unfavorable to Plaintiff. (R. 11-30). Plaintiff appealed the ALJ's decision, and the Appeals Council denied Plaintiff's request for review on September 10, 2024, thus making the ALJ's

decision the final decision of the Acting Commissioner for purposes of judicial review. (R. 1-6).

On November 10, 2024, Plaintiff filed a complaint in the United States District Court for the Eastern District of Pennsylvania. (Compl., ECF No. 1). On November 13, 2024, Plaintiff consented to my jurisdiction pursuant to 28 U.S.C. § 636(c). (Consent, ECF No. 4). On February 25, 2025, Plaintiff filed a Brief and Statement of Issues in Support of Request for Review. (Pl.'s Br., ECF No. 7). The Commissioner filed a response on March 27, 2025. (Resp., ECF No. 8). Plaintiff filed a reply on April 8, 2025. (Reply, ECF No. 9).

## II.     FACTUAL BACKGROUND[1]

The Court has considered the administrative record and summarizes the evidence relevant to the instant request for review. Plaintiff completed high school. (R. 285). He has worked as a taxi driver, truck driver and machine operator. (R. 285).

### A.     Medical Evidence

On June 28, 2021, an MRI of Plaintiff's cervical spine showed "[m]ultilevel spondylosis . . . with up to severe bilateral neural foraminal narrowing and mild central canal narrowing." (R. 512). Degenerative changes were worst at C3-C4 and C4-C5, with "[m]oderate disc osteophyte complex which combines with mild facet arthrosis and uncovertebral joint hypertrophy to result in severe right greater than left neural foraminal narrowing[, and m]ild central canal narrowing and deformation of the ventral cord" (C3-C4) and "[m]ild asymmetric left disc osteophyte complex which combines with mild facet arthrosis and uncovertebral joint hypertrophy to result in severe left and moderate right neural foraminal narrowing[, and

---

[1] Consistent with the factual recitation presented by the parties, the Court limits this section to those facts pertaining to the sole claim raised by Plaintiff.

e]ffacement of the ventral CSF space with no central canal narrowing" (C4-C5). (R. 513).

A July 7, 2021 MRI of Plaintiff's lumbar spine reflected spondylosis and congenital central canal stenosis, with up to moderate foraminal and central canal narrowing. (R. 510). Degenerative changes were worst at L4-L5 and L5-S1, with "mild diffuse disc bulge[,] [s]evere bilateral facet arthropathy[,] [l]igamentum flavum infolding[,] [m]ild to moderate bilateral foraminal narrowing[. and m]oderate central canal narrowing" (L5-L5) and "mild disc bulge[,] [s]evere right and mild left, facet arthropathy; left foraminal narrowing[,] [n]o right foraminal or central canal narrowing" (L5-S1). (R. 510-11).

Around this time, Plaintiff also underwent an MRI and x-rays of his knees. (R. 465). The MRI confirmed arthritis and a lateral meniscus tear in the left knee. (*Id.*). The x-rays similar revealed moderate DJD of the left knee. (*Id.*).

On January 7, 2022, licensed physical therapist Cheuk Ho Chan completed a Functional Capacity Evaluation of Plaintiff. (R. 932-58). He opined that Plaintiff could lift and carry 30 pounds frequently and 60 pounds occasionally; sit a full workday; stand for 30 minutes consecutively and up to 5.25 hours per workday; and walk for six minutes consecutively and up to 2.5 hours per workday. (R. 932, 934).

On January 28, 2023, consultative examiner Ziba Monfared, M.D., noted that Plaintiff had a history of moderate chronic back pain radiating to the left side. (R. 548). Plaintiff reported to Dr. Monfared that his activities of daily living (ADLs) include driving, cooking, cleaning, doing laundry, shopping, personal care, watching television, listening to the radio, socializing, and going to restaurants. (R. 549). Upon examination, Plaintiff stood six feet four inches and weighed 394 pounds. (*Id.*). His gait was normal, and he required no assistance getting on and off the examination table. (*Id.*). A review of his musculoskeletal system was normal. (R. 550).

In the attached Medical Source Statement of Ability to Do Work-Related Activities (Physical), Dr. Monfared opined that Plaintiff could lift and carry up to 20 pounds frequently and 50 pounds occasionally; sit eight hours in a workday without interruption; and stand or walk (each) for four hours without interruption and seven hours in a workday. (R. 552-53). Due to his obesity, Plaintiff also had postural limitations: he could occasionally climb ladders and scaffolds, balance, and crouch and frequently climb stairs and ramps, stoop, kneel, and crawl. (R. 555).

On February 3, 2023, the State agency medical consultant, Jeannie-Corrine Baublitz-Brenenborg, D.O., determined that Plaintiff could occasionally lift and/or carry 25 pounds frequently and 50 pounds occasionally; sit and/or stand or walk for six hours in an eight-hour workday; occasionally climb ladders, ramps and scaffolds; frequently stoop; and climb ramps and stairs, balance, kneel, crouch and crawl without limitation. (R. 57-58). Upon reconsideration, on July 14, 2023, State agency medical consultant Louis Bonita, M.D., made similar findings, except that Plaintiff could only lift 25 pounds occasionally. (R. 66).

Another lumbar spine MRI on March 30, 2023, showed loss of disc signal and height with protrusion and marginal osteophytosis reducing canal diameter narrowing both neural foramina at L3-L4 and L4-L5, more pronounced on the right side at L4-L5 with a two-millimeter degenerative offset further reducing canal diameter. (R. 655). The MRI further reflected modest desiccation with normal disc height but shallow left-sided two-millimeter protrusion at L5-S1. (*Id.*).

  **B.**  **Non-Medical Evidence**

The record also contains non-medical evidence. In a Pain Questionnaire dated December 15, 2022, Plaintiff reported constant, sharp, aching pain in his lower left back with spasms brought on by activity such as sleeping, household chores, lifting and carrying heavy objects, and

4

walking, standing, or bending too long. (R. 319). According to Plaintiff, severe pain may last up to weeks at a time. (*Id.*). He indicated that he receives "a little" relief from heating pads and pain medicines. (R. 320).

In an Adult Function Report from the same date, Plaintiff reported that essentially these same activities, as well as driving long distances and climbing stairs, cause him pain. (R. 323-24, 328). He described his ADLs as consisting of stretching, preparing simple meals, washing dishes, doing laundry, mopping, taking out the trash, running errands, shopping, going to doctors' appointments and watching television. (R. 324-25). He noted that he has difficulty sleeping due to pain but no problems with personal care. (R. 324). He checked boxes indicating difficulties with lifting, squatting, bending, standing, walking, sitting and stair climbing. (R. 328). He explained that he can walk between 10 and 30 minutes before needing to rest for 20 to 30 minutes. (*Id.*).

On June 27, 2023, Plaintiff completed a second Adult Function Report largely repeating the contents of the first. (R. 340-48). He added that he uses a built-in seat while showering to help with the pain of standing. (R. 341). Additional ADLs listed in the second report included light household repairs, changing light bulbs, wiping countertops, cleaning up spills, going to restaurants and attending church weekly. (R. 342, 344). He claimed he could only walk 50 yards before having to rest for up to 20 minutes. (R. 345). Plaintiff further noted that he was wearing a back brace. (R. 346).

On December 4, 2023, Plaintiff testified at the administrative hearing that he stands six feet four inches and weighs between 370 and 390 pounds. (R. 37-38). He stated that he cannot work due to pain caused by walking, heavy lifting, standing long periods, walking up steps, and driving long distances. (R. 42-43). He reported that injections, physical therapy and medications to treat his back pain failed. (R. 43-45).

5

**III.   ALJ'S DECISION**

Following the administrative hearing held on January 22, 2024, the ALJ issued a decision in which she made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2026.

2. The claimant has not engaged in substantial gainful activity since May 11, 2021, the alleged onset date.

3. The claimant has the following severe impairments: degenerative disc disease (DDD) of the cervical spine; DDD of the lumbar spine; left superior cluneal neuropathy; left knee degenerative joint disease (DJD); and obesity (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except: can lift, carry, push, and pull 25 pounds occasionally and 20 pounds frequently; can never climb ladders, ropes, or scaffolds; can frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl as defined in the Selected Characteristics of Occupations (SCO); and can tolerate occasional concentrated exposure to extreme cold, vibration, unprotected heights, and moving mechanical parts.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on November 28, 1968 and was 52 years old, which is

>   defined as an individual closely approaching advanced age, on the alleged disability onset date. The claimant subsequently changed age category to advanced age (20 CFR 404.1563).
>
> 8.  The claimant has at least a high school education (20 CFR 404.1564).
>
> 9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from May 11, 2021, through the date of this decision (20 CFR 404.1520(g)).

(R. 14-25). Accordingly, the ALJ found Plaintiff was not disabled. (R. 25).

### IV.   LEGAL STANDARD

To be eligible for benefits under the Social Security Act, a claimant must demonstrate to the Commissioner that she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382c(a)(3)(A). A five-step sequential analysis is used to evaluate a disability claim:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If she is not, then the Commissioner considers in the second step whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to perform basic work activities. If the claimant

7

>suffers a severe impairment, the third inquiry is whether, based on the medical evidence, the impairment meets the criteria of the impairment listed in the "listing of impairments," . . . which result in a presumption of disability, or whether the claimant retains the capacity to work. If the impairment does not meet the criteria for a listed impairment, then the Commissioner assesses in the fourth step whether, despite the severe impairment, the claimant has the residual functional capacity to perform her past work. If the claimant cannot perform her past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); *see also* 20 C.F.R. § 404.1520(a)(4). The disability claimant bears the burden of establishing steps one through four. If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner at step five to establish that, given the claimant's age, education, work experience, and mental and physical limitations, she is able to perform substantial gainful activities in jobs existing in the national economy. *Poulos v. Comm'r. of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

Judicial review of a final decision of the Commissioner is limited. A district court is bound by the factual findings of the Commissioner if they are supported by substantial evidence and decided according to correct legal standards. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence is "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118 (3d Cir. 2000) (citations omitted). Even if the record could support a contrary conclusion, the decision of the ALJ will not be overruled as long as there is substantial evidence to support it. *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986). The court has plenary review of legal issues. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).

**V.    DISCUSSION**

In his request for review, Plaintiff raises a single claim: that remand is required because

in determining his RFC the ALJ failed to assess the effects of his morbid obesity in combination with his other impairments. (Pl.'s Br., ECF No. 13, at 3-9).

### A.   The Parties' Positions

Citing Social Security Ruling (SSR) 19-2p, Plaintiff observes that when formulating the RFC an ALJ must consider the limitations imposed by obesity because the condition stresses weight-bearing joints and thus may exacerbate the range of motion limitations and pain caused by arthritis and contribute to limitations in exertional and non-exertional activities. (Pl.'s Br., ECF No. 7, at 4, 6). He acknowledges that the ALJ noted that his "BMI of 30 or greater was within a range of obesity" and that she purported to consider "the cumulative impact of his impairments including obesity," but he maintains that she failed to acknowledge that his BMI places him in "the morbid range" of obesity or otherwise perform a detailed analysis of its impact on his RFC. (*Id.* at 6 (citing R. 21, 23)). Plaintiff highlights the imaging results detailed above and adds that these as well as treatment records reflecting reports of muscle spasms constitute objective medical evidence. (*Id.* at 4-5 (citing 20 C.F.R. § 404.1529(c)(2)) (record citations omitted)). He further points to his Pain Questionnaire and Adult Function Report in which he reported that various movements and standing for long periods increase his pain. (*Id.* at 6 (citing R. 319, 323, 328)).

Plaintiff contends that pursuant to the Third Circuit's decision in *Diaz v. Commissioner of Social Security,* remand is required if the ALJ does not discuss the impact of a claimant's obesity in conjunction with her other impairments, especially if, as here, the ALJ acknowledges that it is "severe."[2] (*Id.* (citing 577 F.3d 500, 504 (3d Cir. 2009))). He quotes *Diaz* for the proposition

---

[2] Similarly, he provides a lengthy string cite to district-level cases within this circuit in which court have remanded matters because of an ALJ's failure to adequately address the impact of a claimant's obesity. (Pl.'s Br., ECF No. 7, at 7-8 (citations omitted)).

that "an ALJ must meaningfully consider the effects of a claimant's obesity" on his functionality, on its own and along with his other impairments, at steps three through five of the sequential analysis. (*Id.* at 6-7 (quoting *Diaz*, 577 F.3d at 504)). He adds that *Diaz* also requires the ALJ to discuss the evidence and sufficiently explain her reasoning to allow for meaningful judicial review. (*Id.* at 7 (citing *Diaz*, 577 F.3d at 504)). He observes that *Diaz* emphasized "the interplay between obesity and joint dysfunction, mobility, and musculoskeletal function," as set forth in SSR 02-01p (the forerunner to SSR 19-2p), and concluded that the claimant's "morbid obesity would seem to have exacerbated her joint dysfunction as a matter of common sense, if not medical diagnosis." (*Id.* at 8 (quoting *Diaz*, 577 F.3d at 504 (internal quotations omitted))). Based on this authority, he asserts that his own morbid obesity, in conjunction with DDD in his spine and DJD in his left knee, similarly restricted his ability to carry out the movements and standing required by his medium work RFC. (*Id.* at 8-9 (citing 20 C.F.R. § 404.1567(c))).

The Commissioner responds that the ALJ considered Plaintiff's obesity at step three and in the subsequent RFC determination. (Resp., ECF No. 8, at 4-7). Regarding step three, he maintains that the ALJ fulfilled her duties when she stated:

> The combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately. The undersigned has considered any additional and cumulative effects of obesity and finds that: the claimant's obesity did not increase the severity of co-existing or related impairments to the extent that the combination of impairments meets the requirements of a listing; and the claimant's obesity is not by itself or in a combination of impairments equivalent in severity to a listed impairment (SSR 19-2p).

(*Id.* at 3 (citing R. 17)). The Commissioner points out that no specific listing exists for obesity since the prior one was deleted after the SSA determined that its criteria "were not appropriate indicators of listing-level severity." (*Id.* at 4 (quoting SSR 02-1p, 2002 WL 34686281, at *1 (rescinded))). He adds that SSR 19-2p, the current applicable ruling in this matter, directs ALJs

10

not to "make general assumptions" regarding the severity or limiting effects of obesity in combination with other impairments but to instead evaluate the evidence case-by-case and treat obesity like "any other impairment." (*Id.* (quoting SSR 19-2p, 2019 WL 2374244, at *3)). He acknowledges that under current guidance obesity "may" exacerbate limitations from other impairments but emphasizes that this "is not a foregone conclusion" and that the SSR does not specifically impose any articulation requirement. (*Id.* (citing SSR 19-2p, 2019 WL 2374244, at *3)).

Turning to the RFC, the Commissioner claims that the ALJ appropriately considered Plaintiff's obesity when she wrote:

> Considering this evidence with the record as a whole in favor of the claimant with the cumulative effect of his impairments including *obesity* supports a restricted but greater than basic range of lifting, carrying, standing, and walking such as a range of light exertion with a wide range of postural activities and some tolerance of environmental factors to accommodate the loss of function except precluded vertical climbing as a safety caution against injury. This is generally consistent with the claimant's independence for daily activities as well as his own reports of tolerating greater than basic demands of lifting and carrying.

(*Id.* at 5 (citing R. 23) (emphasis added by the Commissioner)). The Commissioner adds that the exertional, postural and environmental limitations set forth in Plaintiff's RFC "amply accounts" for any limitations stemming from his obesity. (*Id.*). The Commissioner maintains that these statements satisfy the ALJ's obligations under controlling authority. (*Id.* at 5 (citing *Hoyman v. Colvin*, 606 F. App'x 678, 680 (3d Cir. 2015); *Porter v. Colvin*, No. 14-4004, 2015 WL 1969086, at *16 (D.N.J. Apr. 30, 2015))).

The Commissioner distinguishes *Diaz*[3] on the grounds that in that case the ALJ, despite

---

[3] The Commissioner does not address Plaintiff's myriad district court cases.

11

labeling the claimant's obesity as severe, failed to provide any explanation whatsoever regarding how it affected her functionality, and the court specifically noted that the result might have differed "were there any discussion" of that impairment. (*Id.* at 6 (citing 577 F.3d at 504-05; *Neff v. Astrue*, 875 F. Supp. 2d 411, 422 (D. Del. 2012))). He contrasts that case with this one, where "the ALJ considered Plaintiff's obesity at every relevant step of the sequential evaluation, including the RFC . . . ." (*Id.* (citing *Hoyman*, 606 F. App'x at 680)). He also points out that *Diaz* acknowledged that no "particular language or adhere[nce] to a particular format is required of the ALJ when conducting her analysis." (*Id.* (citing 577 F.3d at 504) (internal citations omitted)).

Next, the Commissioner argues that Plaintiff fails to carry his burden of pointing to any additional restrictions warranted by his obesity and that he is unable to do so given the lack of any supporting medical evidence. (*Id.* at 7 (citing *Cosme v. Comm'r of Soc. Sec.*, 845 F. App'x 128, 132 (3d Cir. 2021); *Carter v. Comm'r of Soc. Sec.*, 805 F. App'x 140, 143 (3d Cir. 2020); *Del Grippo v. Comm'r of Soc. Sec.*, Civ. A. No. 20-20119, 2022 WL 2713908, at *5 (D.N.J. July 13, 2022))). The Commissioner adds that, as noted by the ALJ, Plaintiff walked normally, demonstrated full strength and confirmed that he requires no assistance at home or with personal care and can perform a variety of ADLs, including shopping and going to restaurants. (*Id.* (citations omitted)). The Commissioner closes by asking this Court to deny remand in light of the lack of evidence that Plaintiff's ability impacted his functionality to any greater extent than accounted for by the ALJ in his RFC. (*Id.*).

Plaintiff replies that the Commissioner fails to refute his contention that his obesity combined with his other impairments exerted more than a slight limitation on his ability to perform medium work. (Reply, ECF No. 9, at 2). He submits that the ALJ conducted no detailed analysis of the impact of his obesity on his ability to satisfy these work demands beyond

noting that his "BMI of 30 or greater" placed him "within a range of obesity" and claiming that she considered "the cumulative impact of his impairments including obesity." (*Id.* (citing R. 21, 23)). He insists that these statements "fell far short" of the required analysis of his obesity's impact on his work functionality and constitutes reversible error under *Diaz* and his other cited cases. (*Id.* (citing 577 F.3d at 504)). He accuses the Commissioner of impermissibly attempting to fill in the analysis missing from the ALJ's decision. (*Id.* at 2-3 (citations omitted)).

    **B.**    **Analysis**

Despite acknowledging that Plaintiff's obesity constituted a "severe" impairment, her RFC discussion of it consists of only a notation that his "BMI of 30 or greater was within a range of obesity" and a snippet stating that the cumulative effects of all impairments "including obesity" were considered. (R. 17, 21, 23). Such limited analysis falls fall short of *Diaz*'s requirement that the "ALJ meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function . . . ." 577 F.3d at 504. The Commissioner counters that *Diaz* is factually distinguishable because the ALJ in that case "offered no explanation" as to how her obesity affected her functionality and did not address it at all relevant steps including in the RFC formulation, (Resp., ECF No. 8, at 6), but that is precisely what occurred in this case. A vague acknowledgment that Plaintiff falls somewhere "within a range of obesity" and bald declaration that all impairments "including obesity" were considered is not an explanation of its impact. It is not "even a minimal analysis." *See Neff*, 875 F. Supp. 2d at 422 (speculating that the *Diaz* court would have upheld the ALJ's decision if he had "conduced even a minimal analysis of the issue" of the claimant's obesity); *cf. Diaz*, 577 F.3d at 504 (stating that it "might" have upheld the decision if there had been some "discussion of the combined effects of Diaz's" obesity and other impairments). Accordingly, this case is factually closer to *Diaz* than to the cases cited by the Commissioner. *See Hoyman*, 606 F. App'x at 680

("Here, the ALJ explicitly contemplated Hoyman's obesity at the appropriate step (i.e., when assessing Hoyman's RFC).").

The Commissioner further submits that *Diaz* does not apply inasmuch as the Social Security Ruling it cited, SSR 003-p, was replaced in 2019 with SSR 19-2p, which "reflects changes in the rules" published by the SSA and "advances in medical knowledge . . . ." (Resp., ECF No. 6, at 6 (quoting SSR 19-2p)). But even after the replacement of SSR 003-p with SSR 19-2p, courts within this circuit have continued to find limited discussion of obesity like that employed here by the ALJ (or, indeed, more expansive ones) inadequate to support the decision on appeal. For instance, in *Beluch v. Kijakazi*, the District Court of New Jersey rejected as inadequate the following substantially more detailed explanation of the effects of the claimant's obesity on his work functioning:

> The undersigned specifically notes that with respect to the claimant's obesity, while this impairment was not stated by any physician to be disabling, the claimant's obesity was considered in terms of its possible effects on the claimant's ability to work. In the present case, the claimant's file does not contain evidence indicating that his obesity alone has caused him to be unable to work, nor does it show that in conjunction with his other impairments, it has disabled him. As outlined in his function report, the claimant was able to perform his activities of daily living and he was also able to ambulate and walk. Thus, the claimant's obesity is not, by itself, nor in conjunction with his other listed impairments, so severe as to prevent him from working.

No. 22-07341, 2023 WL 7014224, at *5 (D.N.J. Oct. 25, 2023).

Relying on *Diaz*, the court concluded that this analysis was "too conclusory and perfunctory" because "the ALJ did not include any *discussion* of the combined effects of the obesity and other impairments; simply stating that he considered them and found no sufficient effect on Plaintiff's ability to work does not suffice." *Id.* at *6 (citing *Diaz*, 577 F.3d at 504) (emphasis in original). It continued that "[t]he closest" that the ALJ came to fulfilling his

14

obligation was his statement that the claimant could walk and carry out ADLs, but even this "underdeveloped statement" could not be viewed as "meaningful consideration" of the effects of the claimant's obesity (singly and alongside his other impairments) on his ability to function in the workplace. *Id.* (citing *Diaz*, 577 F.3d at 504); *see also, e.g., Glenda M. v. Comm'r of Soc. Sec.*, No. 22-03137, 2023 WL 6387515, at *5 (D.N.J. Sept. 29, 2023) (applying *Diaz* and rejecting a paragraph about obesity of similar length and detail as insufficient); *Ramos v. Kijakazi*, No. 1:20-CV-02415, 2022 WL 3021375, at *5 (M.D. Pa. July 29, 2022) ("brief mention of obesity" without explanation or citation to evidence that the claimant's obesity did not exacerbate her symptoms was inadequate); *Jones v. Kijakazi*, No. 20-5733, 2022 WL 1658419, at *13 (E.D. Pa. May 25, 2022) (describing as "problematic" the ALJ's failure to discuss "whether and how [the claimant's] obesity impacted her other impairments," particularly where it existed alongside other severe impairments that might be worsened by the obesity).

    Citing Plaintiff's ADLs, *Cosme*, *Carter* and *Del Grippo*, the Commissioner additionally argues that Plaintiff did not and cannot identify additional functional limitations stemming from his obesity. (Resp., ECF No. 8, at 7). However, the ALJ never stated that Plaintiff's ADLs foreclosed the possibility that his obesity, alone or in conjunction with his impairments, required additional restrictions in his RFC, and thus the Court does not consider this argument.[4] *See Fongsue v. Saul*, No. 20-574, 2020 WL 5849430, at *8 (E.D. Pa. 2020) ("[T]his court is constrained to review only the ALJ's reasoning, not the post hoc arguments propounded by Defendant after the ALJ's decision") (citations omitted). Moreover, these nonbinding cases are distinguishable because in each the claimant's obesity was not determined to constitute a severe impairment, unlike in this case. *Cosme*, 845 F. App'x at 131; *Carter*, 805 F. App'x at 143; *Del*

---

[4] Indeed, as noted above, she barely addressed it all. (R. 21, 23).

*Grippo*, 2022 WL 2713908, at *5; *see also Hurt v. Comm'r of Soc. Sec.*, No. 19-18627, at *7 n.6 (D.N.J. Feb. 26, 2021) (distinguishing *Carter* and *Rutherford v. Barnhart*, 399 F.3d 546 (3d Cir. 2005), a case relied on by *Cosme*, on this ground). In fact, the *Del Grippo* court explained the difference between the case before it and *Diaz* on this basis: "[I]n *Diaz* . . . the Third Circuit determined that an ALJ is required to evaluate the effect of obesity on the claimant's RFC when a claimant asserts, and the ALJ specifically determines, that a claimant's obesity constitutes a severe impairment. Here, by contrast, the ALJ did not find that Plaintiff's obesity qualified as a severe impairment . . . ." 2022 WL 2713908, at *5.

For these reasons, the Court remands this matter for further consideration of Plaintiff's obesity consistent with this memorandum.

## VI.   CONCLUSION

For the reasons set forth above, Plaintiff's request for review is **GRANTED**, and the matter is remanded for further proceedings consistent with this memorandum. An appropriate Order follows.

BY THE COURT:

/s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge